**FILED & ENTERED**

JUN 14 2024

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>GUSTAVO RUIZ,<br><br>    Debtor.<br><br>---<br><br>GUSTAVO RUIZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>LOAN FUNDER, LLC, a Delaware Limited Liability Company, LOAN FUNDER LLC SERIES 8389, HOF I GRANTOR TRUST 5, a Delaware Trust, JSS ENTERPRISES, INC, an unknown entity, LIL' WAVE FINANCIAL INC DBA SUPERIOR LOAN SERVICING, a Nevada Corporation<br><br>    Defendants. | Case No.: 1:22-bk-11162-VK<br><br>Chapter 7<br><br>Adv. No.: 1:24-ap-01004-VK<br><br>**MEMORANDUM OF DECISION DISMISSING ADVERSARY PROCEEDING**<br><br><u>Hearing:</u><br>Date:  June 12, 2024<br>Time:  1:30 p.m.<br>Place:  Courtroom 301<br>         21041 Burbank Blvd.<br>         Woodland Hills, CA 91367 |

-1-

For the reasons set forth below, the Court will dismiss this adversary proceeding for lack of jurisdiction.

## I.  BACKGROUND

### A.  The Chapter 13 Case

On October 3, 2022, Gustavo Ruiz ("Debtor"), filed a chapter 13 petition, initiating bankruptcy case no. 1:22-bk-11162-VK (the "Bankruptcy Case").  In his voluntary petition, Debtor stated that he had a dba of "Simi Valley Brewing, Inc." and that he lived at 15039 Vose Street, Van Nuys, CA 91405. In his statement of financial affairs, filed on October 18, 2022 [Bankruptcy Case, doc. 8], Debtor indicated that he had not lived anywhere else during the last 3 years.

On October 18, 2022, Debtor filed his schedules of assets and liabilities [Bankruptcy Case, doc. 8].  In his schedule A/B, Debtor represented that he had an interest in the following real properties, each of which is located in Mojave, California: (1) 1853 Richard Avenue; (2) 3327 Martin Avenue; (3) 15829 L Street; (4) 16034 & 16036 K Street; (5) 15559 L Street; and (6) 15834 - 15836 L Street (collectively, the "Rental Properties"). In schedule A/B, Debtor provided a value at $900,000 for his interest in the Rental Properties.

In his schedule C, Debtor claimed a $279,067 exemption in the Rental Properties under California Code of Civil Procedure § 704.730. In his schedule D, Debtor disclosed a claim owed to Superior Loan Servicing in the amount of approximately $620,000, secured by a deed of trust encumbering the Rental Properties.

In his schedule G, Debtor indicated that he did not have any unexpired real property leases, and in his statement of financial affairs, Debtor indicated that he had generated no income from January 1, 2022 to the petition date and in 2020 and 2021.  In contrast, in his schedule I,

Debtor indicated that he generated $10,000 per month in net income from rental property and from operating a business.

B.  **Motion to Convert Chapter 13 Case to One Under Chapter 11**

On December 13, 2022, Debtor file a motion to convert his chapter 13 case to one under chapter 11 (the "Chapter 11 Conversion Motion") [Bankruptcy Case, doc. 25]. In his declaration filed in support of the Chapter 11 Conversion Motion, Debtor stated that he owned the Rental Properties, that they were 100% rented and Debtor received enough rental income to propose a feasible plan under chapter 11 [Bankruptcy Case, doc. 25]. Debtor also stated that the Rental Properties were encumbered with a deed of trust which secured a claim in the amount of $643,45.21, which deed of trust was held by "HOF [I] Grantor Trust 5," as set forth in its proof of claim filed on November 7, 2022 (the "HOF I Proof of Claim").

In his declaration, Debtor represented that this loan was fully matured and that the five-year cure period under a chapter 13 plan was insufficient for Debtor to cure the arrears. Consequently, Debtor sought to convert the chapter 13 case to one under chapter 11. *Id*.

In connection with the hearing on the Chapter 11 Conversion Motion, the Court asked Debtor to address the following issues, among others: (1) why Debtor's statement of financial affairs represented that Debtor had no income during 2022, before Debtor filed his chapter 13 petition, and also that Debtor had no income during the two prior years; (2) why Debtor represented in his petition that Debtor had used a dba of Simi Valley Brewing in the last 8 years, when Debtor did not identify Simi Valley Brewing as a business which Debtor owned or with which he had a connection in his statement of financial affairs; and (3) if the Debtor was leasing the Rental Properties and earning rental income from them, why did Debtor state in schedule G that he had no unexpired leases. At the hearing on the Chapter 11 Conversion Motion, the Court

continued the hearing and mandated that Debtor file amended schedules and an amended statement of financial affairs [Bankruptcy Case, doc. 37].

On January 10, 2023, Debtor filed amended schedules and an amended statement of financial affairs [Bankruptcy Case, doc. 36]. In his amended schedule G, Debtor identified a rental agreement and the lessee for each of the Rental Properties, and in his amended statement of financial affairs, Debtor stated that he owned Simi Valley Brewing, Inc. from 2018 to October 3, 2022. Debtor did not indicate that he had owned or had any connections to any other businesses within the four years before the Bankruptcy Case was filed.

In a second amended statement of financial affairs, filed on January 23, 2023, Debtor disclosed rental income generated from January 1, 2022 to October 3, 2022 and for 2021 and 2020 [Bankruptcy Case, doc. 41]. Debtor also supplemented his response to provide an EIN for Simi Valley Brewing, Inc. *Id*. Based on the Chapter 11 Conversion Motion, Debtor's supporting declarations and the amended schedules and statement of financial affairs, the Court entered an order converting the case to one under chapter 11 [Bankruptcy Case, doc. 46].

In February 2023, the United States Trustee filed a motion to dismiss or convert the chapter 11 case, because Debtor had not complied with the requirements of the United States Trustee Guidelines (the "UST Guidelines") and Local Bankruptcy Rules, as applicable to chapter 11 cases [Bankruptcy Case, doc. 55]. In response to that motion, Debtor's bankruptcy counsel filed a declaration stating that, as a result of Debtor's absence and counsel's resulting inability to communicate with Debtor, Debtor's bankruptcy counsel had been unable to obtain the required documents and information to proceed with the case in compliance with the UST Guidelines [Bankruptcy Case, doc. 65]. Consequently, in March 2023, the Court entered an order converting the chapter 11 case to one under chapter 7 [Bankruptcy Case, doc. 69].

C.  **The HOF I Secured Claim**

On November 17, 2022, HOF I Grantor Trust 5, a Delaware Trust ("HOF I"), filed the HOF I Proof of Claim. Attached to the HOF I Proof of Claim is a Commercial Promissory Note in the principal amount of $387,500.00, dated July 23, 2019, from Simi Valley Brewing, Inc. to Loan Funder LLC, Series 8389 (the "Promissory Note"). The Promissory Note provides that the entire principal amount of the note, together with accrued interest and all other sums due thereunder, is due and payable in full on July 23, 2020. The Promissory Note is signed by Debtor, as President of Simi Valley Brewing, Inc.

Also attached to the HOF I Proof of Claim is a Commercial Deed of Trust, Security Agreement and Fixture Filing, recorded in Kern County on August 5, 2019, by which Simi Valley Brewing, Inc. encumbered its right, title and interest in the Rental Properties to secure the Promissory Note (the "Deed of Trust"). The Deed of Trust is signed by Debtor as President of Simi Valley Brewing, Inc. Another document attached to the HOF I Proof of Claim is an Assignment of the Deed of Trust from Loan Funder, LLC, Series 8389 to HOF I, which Assignment was recorded in Kern County on February 20, 2020.

Also attached to the HOF I Proof of Claim are two Extension Agreements. The first one is dated July 23, 2020, and provides for an extension of the due date under the Promissory Note to October 31, 2021. The second one is dated October 23, 2021, and provides for an extension of the due date under the Promissory Note to April 23, 2022. Both of these Extension Agreements are signed by Debtor as President of Simi Valley Brewing, Inc. and individually, as guarantor.

D.  **The Settlement Agreement**

On November 2, 2023, Amy L. Goldman, the chapter 7 trustee (the "Trustee"), filed a motion to approve a settlement agreement with Debtor (the "Compromise Motion") [Bankruptcy

Case, doc. 112]. In the Compromise Motion, the Trustee requested that the Court approve a settlement agreement between the Trustee and Debtor (the "Settlement Agreement"). *See* Exh. 1 to the Declaration of Amy L. Goldman (the "Goldman Declaration") [Bankruptcy Case, doc. 112].

The Settlement Agreement includes the following terms:

1.2.1  Upon execution of this Agreement, the Debtor shall pay $140,000 to the Trustee (the "Settlement Payment").

1.2.2  In exchange for the Settlement Payment, upon Bankruptcy Court approval of the Agreement (a) the Rental Properties, subject to all liens, claims, and encumbrances, shall be deemed abandoned to the Debtor and no longer remain property of the Debtor's estate, and (b) all rights and interests in the Avoidance Claims[1] shall be transferred to the Debtor.

…

**2.1  Release**:

a.…[T]he Trustee agrees to and does release and waive all claims and cause of action the estate now has, whether known or unknown, against Debtor arising from and related to the Rental Properties, [Simi Valley Brewing, Inc.] and the Avoidance Claims . . . .

b.…Debtor agrees to and does release and waive all claims and causes of action it now has, whether known or unknown, against the Trustee, Trustee's counsel, the Debtor's estate arising from and related to the Rental Properties, [Simi Valley Brewing, Inc.] and the Avoidance Claims  . . . .

The Compromise Motion was never set for hearing. Instead, the Trustee provided notice to certain parties in interest of the Compromise Motion and the deadline to file any response to that motion [Bankruptcy Case, doc. 113]. After no responses to the Compromise Motion were filed by that deadline, the Trustee filed a declaration stating that the Compromise Motion was not opposed and lodged an order to grant the

---

[1] The Settlement Agreement describes the "Avoidance Claims" as avoidance claims which Debtor's estate may assert: (1) against HOF I "with respect to the loan between Debtor and [HOF I] secured by the Rental Properties;" and (2) with respect to a mechanics' lien recorded against each of the Rental Properties, "purportedly securing payment for construction provided to [Simi Valley Brewing, Inc.] and not construction on the Rental Properties."

Compromise Motion [Bankruptcy Case, doc. 114]. On December 14, 2023, the Court entered that order [Bankruptcy Case, doc. 115].

### E.     The Adversary Proceeding

On February 14, 2024, Debtor filed a complaint initiating this adversary proceeding (the "Complaint") against: (1) Loan Funder LLC; (2) Loan Funder LLC Series 8389 ("Series 8389"); (3) HOF; (4) JSS Enterprises Inc; and (5) Lil' Wave Financial Inc (collectively, the "Defendants"). In the Complaint, Debtor asserts the following claims against all defendants: (1) avoidance of transfers pursuant to 11 U.S.C. § 544(a) and (b) and California Civil Code ("CCC") §§ 3439.04(a), 3439.07 and 3439.09(a) and (c); (2) recovery and preservation of avoided transfers pursuant to 11 U.S.C. §§ 550(a)(1) and (a)(2) and 551; (3) violation of CCC § 1632; (4) intentional misrepresentation; (5) unfair business practices pursuant to California Business & Professions Code § 17200; (6) fraud; and (7) declaratory relief. In addition, Debtor asserts a claim against Loan Funder LLC and Series 8389 for violations of California Financial Code § 4970, et seq.

On April 2, 2024, the Court entered its *Order to Show Cause Why This Adversary Proceeding Should Not Be Dismissed* (the "OSC") [doc 11]. In the OSC, the Court notes that, given that this is a case under chapter 7, the Rental Properties have been abandoned by the Trustee and the Settlement Agreement does not provide for any benefits arising from "Avoidance Claims" to be provided to Debtor's creditors, it appears that Debtor cannot prosecute causes of action which are based on 11 U.S.C. §§ 544(a) and (b), 550(a)(1) and (a)(2) and/or 551. In addition, the OSC states that Debtor, in this chapter 7 case, has no duty to maximize recovery for creditors and any recovery Debtor obtains through this adversary proceeding apparently would not benefit the estate. Finally, in the OSC, the Court questions whether it has subject matter

jurisdiction over the remaining causes of action in the Complaint, because those causes of action apparently do not "arise under title 11," do not "arise in" the Bankruptcy Case and are not "related to" the Bankruptcy Case, i.e., because Debtor is the sole beneficiary of the asserted causes of action, the outcome of this adversary proceeding will not conceivably have an effect on Debtor's bankruptcy estate.

Taking into account: (1) the terms and impact of the Settlement Agreement; (2) that Debtor is not prosecuting the Avoidance Claims for the benefit of creditors; and (3) that the outcome of this adversary proceeding will not conceivably have an effect on the estate in this case, the OSC ordered Debtor to explain why this adversary proceeding should not be dismissed for lack of subject matter jurisdiction. On April 9, 2024, Debtor filed a response to the OSC (the "Response") [doc. 17]. No other party in interest has filed a response to the OSC.

In his response, Debtor asserts that he, like any creditor, may purchase and prosecute avoidance claims. Debtor contends that the Court should consider the benefit that the estate received from Debtor's settlement with the Trustee, pursuant to which Debtor paid $140,000 to the Trustee and the Rental Properties are deemed abandoned to Debtor. Debtor further contends that dismissal of this adversary proceeding could render the Settlement Agreement null and void.

In addition, regardless of whether benefits to the estate exist, Debtor states that the facts in the Complaint support a cause of action under 11 U.S.C. § 522(h). Finally, Debtor represents that he has agreed to provide the estate with 1% of a recovery in this adversary proceeding, and that the Trustee will file a motion to seek approval of an amended settlement agreement.

## II. RELEVANT AUTHORITY

A.  *Exemptions Under 11 U.S.C. § 522*

11 U.S.C. § 522 provides, in relevant part:

>   (b)    (1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in…paragraph (3) of this subsection...
>
>   …
>
>   (g)    Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section…550, [or] 551 . . . of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
>   > (1) (A) *such transfer was not a voluntary transfer of such property by the debtor*; and
>   >
>   > (B) the debtor did not conceal such property; or
>   >
>   > (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.
>
>   (h)    The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
>   > (1)    such transfer is avoidable by the trustee under section 544...of this title…; and
>   >
>   > (2)    the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(b)(1), (g) and (h) (emphasis added).

**B.    *Avoidance Actions and Remedies Under 11 U.S.C. §§ 544, 550(a) and 551***

11 U.S.C. § 544 states, in pertinent part:

>   (a)    The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
>   > (1)    a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

>   (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
>   (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
>
> (b) (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 550(a) states, in relevant part, that "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544…of this title, the trustee may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property." Pursuant to 11 U.S.C. § 551, "[a]ny transfer avoided under section...544...of this title…is preserved for the benefit of the estate but only with respect to property of the estate."

"[11 U.S.C. § 544] was designed to aid the trustee in recovering properties of the estate for the eventual benefit of all creditors." *In re LMJ, Inc.*, 159 B.R. 926, 928 (D. Nev. 1993). "If a creditor is pursuing interests common to all creditors or is appointed for the purpose of enforcement of the plan, he may exercise the trustee's avoidance powers." *In re Professional Inv. Properties of America*, 955 F.2d 623, 626 (9th Cir. 1992). *See also In re P.R.T.C., Inc.*, 177 F.3d 774, 782–83 (9th Cir. 1999) ("a bankruptcy court can authorize a creditor to exercise [a trustee's avoidance] powers if: (1) the creditor is pursuing interests common to all creditors…and (2) allowing the creditor to exercise those powers will benefit the remaining creditors").

"In order to have standing to seek recovery of an avoided transfer under § 550, the recovery must be for the benefit of the estate." *In re Gerlinger, Inc.*, 2008 WL 3992140, at *9 (Bankr. N.D. Ohio Aug. 25, 2008). *See also In re Kmart Corp.*, 310 B.R. 107, 126 (Bankr. N.D. Ill. 2004) ("[S]ection 550(a) has the effect of limiting actions to only those actions that benefit the estate.") (citing *Matter of P.A. Bergner & Co.*, 140 F.3d 1111, 1117 (7th Cir. 1998)).

Regarding § 551, "[i]n the case of an avoided security interest or lien, § 551 ensures that a trustee avoiding a senior lien moves into that priority position and the estate is not trumped by the existence of a junior lien." *In re Trout*, 609 F.3d 1106, 1109 (10th Cir. 2010). "[U]pon avoidance of a lien, under § 551 the trustee 'steps into the shoes of the former lienholder, with the same rights in the collateralized property that the original lienholder enjoyed.'" *Id*. at 1110 (*quoting Morris v. St. John Nat'l Bank (In re Haberman)*, 515 F.3d 1207, 1210 (10th Cir. 2008)).

"Section 551 is very specific when it states that a transfer avoided under § 544… 'is preserved for the benefit of the estate but only with respect to property of the estate.'" *In re Yacoobian Enterprises LP*, 2012 WL 3818194, at *4 (Bankr. C.D. Cal. Sept. 4, 2012).

C.  *Jurisdiction*

Federal Rule of Civil Procedure 12(h)(3) requires that a court dismiss an action at any time upon finding a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Bankruptcy courts have jurisdiction over all civil proceedings (1) "arising under title 11," i.e., any proceedings to enforce rights created by the Bankruptcy Code, (2) "arising in" a bankruptcy case, i.e., other proceedings that would not exist outside a bankruptcy case, such as case administration, or (3) "related to" a bankruptcy case, i.e., any proceedings the outcome of

which could "conceivably" have any effect on the bankruptcy estate. *See* 28 U.S.C. § 1334(b); *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009); *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).

### 1. *Arising Under Jurisdiction*

"A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010).

### 2. *Arising In Jurisdiction*

"A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id*.

In *In re Harris*, 590 F.3d 730 (9th Cir. 2009), the Ninth Circuit Court of Appeals held that the state law contract claim asserted by the debtor ("Harris") against the chapter 7 trustee, for breach of a settlement agreement, arose in the debtor's bankruptcy case. Consequently, the bankruptcy court had jurisdiction over the debtor's state law breach of contract claim. As noted by the Court of Appeals:

> Harris's breach of contract claim is not created or determined by Title 11; it is a common law action, therefore it does not qualify for 'arising under' jurisdiction. The bankruptcy court, thus, had authority to hear Harris's claim *only if the claim arose in his bankruptcy case*. *See* 28 U.S.C. §§ 1334(b) and 157(a).

*Id.* at 737 (emphasis added).

As explained by the Court of Appeals, "although it is a state law cause of action, [the debtor's] claim arose in his bankruptcy case because it could not exist independently of his bankruptcy case. [The debtor] alleged that Wittman, the bankruptcy trustee, breached the Settlement Agreement by selling bankruptcy estate assets that she had agreed not to sell . . . .

Therefore, [the debtor's] state law claim arose in his bankruptcy case, and it could be referred to the bankruptcy court." *Id.* at 738.

### 3. Related to Jurisdiction

Bankruptcy courts also have jurisdiction over proceedings that are "related to" a bankruptcy case. 28 U.S.C. § 1334(b); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005). A proceeding is "related to" a bankruptcy case if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pegasus Gold Corp.*, 394 F.3d at 1193. If a claim results in a recovery that is beyond the reach of the debtor's creditors, the claim is not "related to a case under title 11." *In re Fietz*, 852 F.2d 455, 459 (9th Cir. 1988).

### III.    ANALYSIS

**A.    Debtor's Ability to Prosecute Claims Under Sections 544, 550 and 551**

Under § 550, transferred property may be recovered "for the benefit of the estate[.]" 11 U.S.C. § 550(a). Under § 551, any transfer avoided under § 544 is preserved "for the benefit of the estate[.]" 11 U.S.C. § 551. However, assuming Debtor prevails, only Debtor will obtain any benefit from pursuing the Avoidance Claims. Consequently, Debtor has not shown that he has standing to prosecute claims under §§ 550 (a)(1) and (a)(2) and 551.

*In re Lahijani* 325 B.R. 282, 285 (9th Cir. BAP 2005), referred to as *Simantob* in the Response, is inapposite. There, in exchange for a fixed sum plus a percentage of net recoveries to be provided to the estate, creditors attempted to acquire fraudulent transfer and turnover causes of action from a chapter 7 trustee. The debtor's relative, who, along with the debtor, would be a defendant in such avoidance and turnover actions, offered a sum certain, instead of a net percentage of any recovery, to purchase the claims. The relative conceded that he did not intend

to prosecute the causes of action.

After bidding commenced, in evaluating the bids, the chapter 7 trustee refused to take into account any portion of the creditors' offers which included a percentage of net recoveries to be provided to the estate. As requested by the chapter 7 trustee, the bankruptcy court held that: (1) it would take into account only the payment of a certain amount of money in the bids; (2) that the relative's offer was the best offer for the estate's causes of action; and (3) that the debtor's relative, who would not pursue those causes of action, could acquire these causes of action from the estate, over the objection of creditors.

The issues on appeal were:

> 1. Whether the court applied the correct legal standard when approving a section 363 sale of causes of action to a defendant, over objection by the main creditor in the case, who wanted to pursue the causes of action.
>
> 2. Whether the sale of causes of action to defendants in this instance meets the requirements for approving a compromise as "fair and equitable."

*Id*. at 287. The Ninth Circuit Bankruptcy Appellate Panel held that, when a cause of action is being sold to a present or potential defendant over the objection of creditors, the bankruptcy court must "in addition to treating it as a sale, independently evaluate the transaction as a settlement under the prevailing 'fair and equitable' test, and consider the possibility of authorizing the objecting creditors to prosecute the cause of action for the benefit of the estate, as permitted by § 503(b)(3)(B)."[2]

Here, Debtor seeks to avoid and recover, for his own benefit, allegedly fraudulent transfers concerning the Rental Properties, the Promissory Note and the Deed of Trust. However,

---

[2] 11 U.S.C. § 503(b)(3)(B) provides that the court must allow an administrative expense for actual, necessary expenses incurred by a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor.

-14-

in *Lahijani*, the BAP did not hold that a chapter 7 debtor may prosecute avoidance actions, which arise under provisions of the Bankruptcy Code, *without providing for any recovery to be shared with creditors*. Rather, the BAP held that a defendant's offer to acquire the estate's interest in such causes of action, with the intent to extinguish them, must be evaluated under the standards for approval of a settlement with that defendant, as well as under the standards for the sale of an asset.

When the Court granted the Compromise Motion, the Court did not decide whether Debtor could prosecute causes of action held by the estate under §§ 544, 550 and 551, when the Rental Properties had been deemed abandoned to Debtor under the Settlement Agreement, and the estate would not receive any benefit from Debtor's prosecution of such causes of action. Moreover, assuming Debtor and the Trustee are willing to amend the Settlement Agreement so that Debtor's prosecution of this adversary proceeding may provide a benefit to the estate, no motion seeking approval of such an amended agreement has been filed.

Regarding Debtor's contention that he has the power to avoid a transfer of his property under § 522(h), Debtor disregards the portion of that statute which provides that Debtor may do so if the transfer was *not voluntary*. Debtors have the burden of showing that a transfer was not voluntary under 11 U.S.C. § 522(g) and (h). *In re Trevino*, 96 B.R. 608, 613 (Bankr. E.D. North Carolina 1989) ("When a debtor voluntarily grants a security interest in property or makes an absolute transfer, he gives up his exemption rights with respect to that property and he cannot recover those rights simply because the bankruptcy trustee can acquire rights superior to the transferee.").

Here, Debtor apparently signed the Promissory Note, the Deed of Trust and the Extension Agreements. Consequently, if such transfers are avoidable by the Trustee under section 544,

Debtor cannot avoid any such transfers which took place pursuant to the Promissory Note, the Deed of Trust or the Extension Agreements. *In re Cunningham*, 2014 WL 5427506 * 3-4 (C.D. Cal. Oct. 24, 2014) (affirming bankruptcy court's dismissal of debtor's complaint with prejudice, because of debtor's lack of standing to assert trustee's avoidance powers under § 522(h); "a debtor cannot succeed to the trustee's avoidance powers and exempt property that has been recovered by the trustee when the transfer sought to be avoided was voluntarily entered into by the debtor"); *In re Rodriguez*, 361 B.R. 887, 894 (Bankr. D. Ariz. 2007) (after debtor failed to establish that granting of deeds of trust were involuntary transfers as required by § 522(g)(1), holding that debtor lacked standing under § 522(h) to set aside deeds of trust and that court lacked jurisdiction to decide claims in debtor's complaint and dismissing adversary proceeding with prejudice).

### B.     *Debtor's State Law Claims*

Besides Debtor's claims under §§ 544, 550 and 551, the remaining claims in the Complaint are: (1) avoidance of transfers pursuant to CCC §§ 3439.04(a), 3439.07 and 3439.09(a) and (c); (2) violation of CCC § 1632; (3) intentional misrepresentation; (4) unfair business practices pursuant to California Business & Professions Code § 17200; (5) violations of California Financial Code § 4970, et seq.; (6) fraud; and (7) declaratory relief (collectively, the "Remaining Claims").

The Remaining Claims do not arise under the Bankruptcy Code; these causes of action are not created or determined by a statutory provision of the Bankruptcy Code, and these claims could exist in the absence of the Bankruptcy Case. In addition, these claims could have an independent existence outside of the Bankruptcy Case. Finally, the outcome of the litigation could not conceivably have an impact on the bankruptcy estate because, pursuant to the

Settlement Agreement, the Rental Properties are deemed abandoned to Debtor and Debtor is not obligated to provide any benefits arising from Debtor's prosecution of the adversary proceeding to the estate. Regardless of how the Remaining Claims are resolved, the estate will not be affected. Consequently, the Court does not have subject matter jurisdiction over the Remaining Claims.

## IV. CONCLUSION

For the reasons discussed above, the Court will dismiss this adversary proceeding.

### ###

Date: June 14, 2024

Victoria S. Kaufman
United States Bankruptcy Judge

-17-